PUBLIC SERVICE CO-ORDINATED TRANSPORT, A CORPO-
RATION, RELATOR, v. ADDISON H. CLARK, AS COL-
LECTOR OF TAXES OF THE TOWN OF WESTFIELD,
DEFENDANT.

Argued October term, 1928—Decided November 22, 1928.

Before Justices MINTURN, BLACK and CAMPBELL.

For the relator, *Frank Bergen.*

For the defendant, *Paul Q. Oliver.*

PER CURIAM.

This is an application for a peremptory or alternative writ
of *mandamus* requiring the respondent to accept the moneys
tendered by the relator in payment of the first half of the
franchise taxes assessed against the relator for the year 1927,
and apportioned to the town of Westfield, and to issue his re-
ceipt therefor, and to cancel the tax lien of record.

The facts in the case are agreed upon by stipulation. The
relator is a traction company of the State of New Jersey and
subject to the franchise taxes imposed by chapter 290.
*Pamph. L.* 1906, *p.* 644. A portion of its railway is in the
town of Westfield, and therefore under the act a portion of
the franchise taxes so assessed is apportioned by the state
board of taxes and assessments to the town of Westfield.
Under the provisions of section 6 of the act these taxes become
due and payable in the same manner as other taxes, one-half
on June 1st and one-half on December 1st in each year; and

are made a first lien upon the property and franchises of the corporation in the taxing district on December 1st following the assessment, until paid. They are to be collected in the same manner and subject to the same discounts and penalties as other taxes.

The total amount of the 1927 franchise tax against the railway apportioned to the town of Westfield was $5,929.03, divisable as aforesaid.

About June 1st, 1927, the relator tendered to the respondent collector one-half of such taxes less the sum of $624.45, which was the amount which the relator theretofore paid to the town of Westfield in pursuance of a contract entered into between the relator and the said town, which the relator claims it had the right to deduct under the provisions of section 7 of the Franchise Tax act. Respondent refused to receive the same as tendered upon the ground that the reduced amount is not lawfully deductible under the provisions of the said act.

The franchise ordinance under which the railway tracks in Westfield are maintained contain the following provision:

"7. Said company and its officers, agents, servants and employes shall not, nor shall any or either of them, be allowed to shovel, throw or place snow, ice, slush or any other material along the side of its tracks in such manner as to obstruct or hinder other public travel thereon, nor on the said streets and avenues; when removing the said snow, ice, slush or other material from its tracks, said company and its officers, agents, servants and employes shall, without unnecessary delay, and within twenty-four hours after service of a written notice by or on behalf of the township committee, and with a sufficient force of men, cause the same to be leveled between the tracks and the gutter line of each side thereof."

Thereafter an agreement was made between the town of Westfield and the predecessor of the relator that in lieu of the railway company complying with the aforesaid provisions of the franchise ordinances the town of Westfield would remove all of the snow from certain streets in the town, and that the relator's predecessor should pay to the town one-half of the cost incurred in removing the snow from portions of Elm

street, East Broad street, Westfield avenue and Summit avenue. This agreement was carried out, and in the year 1926 the town of Westfield sent a bill for the relator's predecessor's share of the expense in the doing of this work, in the sum of $624.45, which amount was duly paid. This is the amount which is now in controversy, and the question to be determined is whether or not the said sum may be deducted from the franchise tax apportioned to the town of Westfield under the provisions of section 7 of the Franchise Tax act. *Pamph. L. 1906, p. 647.* That section reads as follows:

"All money now or hereafter payable by any street railroad corporation to any taxing district for its exclusive use, pursuant to any contract, agreement, resolution or ordinance [except money expended for paving or repairing a street, highway or any other public place, or taxes on real or personal property] shall be paid, notwithstanding this act, and when paid shall be considered on account of or in full, as the case may be, for the franchise tax to be assessed and apportioned according to the provisions hereof; if the amount so payable is greater than the amount of the franchise tax apportioned to such taxing district, such payment shall be in lieu thereof; if less, the difference in amount shall be payable as herein provided."

It is now insisted by the relator that it is entitled to a peremptory writ requiring the respondent to accept the money tendered and to give a receipt in full for the franchise taxes assessed and payable June 1st, 1927, and to cancel the tax lien upon the records of the township.

It is to be observed that the franchise ordinance (1898) under which the relator's predecessor operated contained a stipulation obliging it to level between the tracks and street curbs such quantities of snow as it removed from its tracks. The agreement entered into between the predecessor of the relator and the town was to the effect that the town might remove all snow from certain streets above specified, and the transport company or its predecessor agreed to pay half of the expense of such removal. As we read this agreement and construe it, it obligated the transport company to remove the

snow instead of leveling it, on condition that the town would perform such service for it at a cost of fifty per cent. of the removal of all the snow from the street, and under the Franchise Tax act above cited we think that the expense thereby incurred is not to be chargeable against any taxes assessed on real or personal property of the relator or its predecessor.

In our judgment the manifest construction of chapter 290 (*Pamph. L.* 1906), which provides that every street railway line shall pay an annual franchise tax to the municipality through which it is operated, was to compel such street railway lines to pay the tax to the municipalities through which they operated. In *Phillipsburg Horse Car Railroad Co.* v. *State Board of Assessors,* 82 *N. J. L.* 49, it was declared that the tax imposed by this act is a franchise tax for the use of the streets, and it was further declared: "This is indicated by section 7, which provides that money payable to a taxing district pursuant to any contract shall be paid notwithstanding this act, but that the amounts so paid shall be deducted from the tax assessed under the act and apportioned to such district under its provisions. Money paid under such contracts are usually to be paid in consideration of the granting by the municipality of the franchise to occupy its streets. Such provision is tantamount to an expression that the privilege upon which this tax is levied and the privilege for which such moneys are paid under such contracts are to some extent, at least, similar."

The act of 1906 (chapter 290) limits the deduction by the transport company to moneys paid to the municipality by way of license fee "for the exclusive use of the municipality." The effort in this instance is to enable the company to deduct the money paid to the town to reimburse the town for money expended by it for the benefit and use of the company at the request and agreement of the company. This construction is emphasized by the language, "for the exclusive use of the municipality." The license fees paid in this instance by the transport company, as fixed by the franchise ordinance, are for the exclusive use of the town, similar to other taxes; but in this instance the agreement is made to deduct one-half of

the cost of the snow removal on certain streets, which is tantamount to the assertion that the town has been reimbursed for money actually paid out for its own use. We are inclined to agree in this respect with the views of the attorney-general in his opinion to the commissioner of municipal accounts, cited in the briefs as follows:

"If a street railway purchases its water from a municipality that company cannot deduct the amount so paid for water from the franchise taxes due under the act. Where the company receives an equivalent in value for the thing which it pays, no deduction can be made. This section (7) does not authorize any deduction by the railroad companies for commodities supplied or services rendered."

We are of the opinion that the agreement between the company and the township, to the effect that the latter should remove the snow as required by ordinance, was a matter of convenience to the transport company. Under the agreement it admitted its obligation to remove the snow, but substituted the township to perform this service for it at a cost of fifty per cent. of the cost of removal of all the snow from the street.

Our consideration of the entire case leads us to the conclusion that the sum of money in question, the subject-matter of this contention, is not properly chargeable against the township on account of the payment of the franchise tax, and cannot be deducted therefrom, and we therefore have reached the conclusion that the rule to show cause should be discharged.